3-9 SDK Solutions v. United States Okay, Mr. Henry, whenever you're ready. Good morning, Your Honors, I'm Ron Henry for the Appellant SDK, and with me is Robert Wagman, also a caseholder. I'll reserve a few moments for the end for rebuttal. We believe that this is a rather simple and narrow case. The parties agree that the so-called rule of two applies here. The parties agree that the government needs a reasonable basis to not do a set-aside for such a reasonable basis. What is our standard of refuge? It is a deferential standard. They have a range of discretion, and we're not denying the opportunity for the government to discharge its burden in a variety of means. But when you look at what they did in this particular case, we think they failed to provide the reasonable basis. And in fact, I'll cite to one of the cases they put in their own brief, because these are very fact-determinative cases. We know what the standard is. The standard is not in dispute. And the case I'm going to quote from actually is a case they cited where the court agreed that a set-aside was not necessary. But the court said the standard it has to look at, and this is the MCS management case, the court said the standard it has to look at arises because gaps in logic and reason lead to arbitrary conclusions. And that's what we've got here. We have gaps in logic and reason. Is your argument affected or impacted by this court's decision in Kingdom War? I don't believe so, Your Honor. Why? I will confess that my familiarity with that particular case is limited. I have focused on the facts that we have here because we believe that what we're talking about is an unambiguous standard of judicial review, and that under all the case law, this court will find that there was a lack of a reasonable basis for what this agency did here. In Kingdom War, this court held that the CEO is not required to apply the two-step analysis, the rule of two analysis, in every solicitation, every bid. Certainly, Your Honor, there can be situations where the rule of two does not apply. It has not been argued by any party that there would be an exception to the rule of two in this case. All of the briefs from all the parties below and in this court have acknowledged the applicability of the rule of two. That has never been raised as an issue by any party. We believe that the rule of two is fully applicable here. We don't have any reason to believe that there would be an exception to the rule of two. You're arguing that the CEO was in error in its rule of two analysis. That's correct, Your Honor. We believe that the rule of two... In Kingdom War, we said that the CEO is not even required, that they have discretion to decide when to apply the rule of two analysis or not. We understand that, Your Honor, but what we understand also is when we look at the FAR provision that's applicable here, 19.502, I believe it is, that the requirement does apply in this case and that all of the parties have proceeded completely through this entire process. But the government found here that the rule of two was satisfied, right? What happened in this case, Your Honor, was that we first filed a bid protest at the Government Accountability Office, and we argued that they had not done a proper rule of two analysis in that first protest. Okay. Tell us in English what a rule of two is. Oh, I'm sorry. Yes, of course. Maybe we should be just discussing this as a... Yes, I'm quite sorry. What happens under the Competition and Contracting Act, under the Small Business Act, is there's an obligation for the agency to conduct competitive procurements, and one of the requirements that comes out of the Small Business Act and is laid out in the Federal Acquisition Regulations at 19.502, is that there's a requirement to set aside for small businesses those procurements where the agency finds or has a reasonable basis to determine that two or more small businesses will submit acceptable proposals at a reasonable price. Okay. And here the market research that they did indicated that the rule of two cannot be satisfied? That's exactly the problem we have here, Your Honor, that in this case, this agency followed a process that, in the words of the MCS management decision, had gaps, had logical fallacies in it that caused them to reach an arbitrary conclusion, and that's why we're here. That their decision to not set aside violated their obligation because the rule of two properly applied was satisfied here. Okay. Why don't you give us the heart then? I mean, this is a deferential standard. Where were they wrong? Exactly so. So, and we have this in the brief. To this day, they have not identified a single item, a single set of salient characteristics that would be unavailable from multiple small businesses. That is the definition of satisfying the rule of two. If you have two or more small businesses who are capable of meeting the government's need at a reasonable price, the agency is supposed to do a set-aside for small businesses. In this case, we have, at every stage of these proceedings, at GAO, at the Court of Federal Claims, in our briefs here to this Court, we have said and challenged them over and over again, tell us, is there a single product within your needs, is there a single thing you have identified that you want to buy, a single thing within your actual minimum requirements for which you don't find the availability of two or more small businesses. They have not found and not identified a single thing. And let me put this in terms of what you might call their... Well, I mean, there's like 20 pages of analysis, right? And the contracting officer, I mean, reached that conclusion, right? They did reach a conclusion, but if I may be... So I don't understand. So I'm asking you to tell me where, I mean, point me to something and say they said this and that's contrary to what the facts are in the record. Absolutely. And that is the beginning point, Your Honor. They have an obligation to set us aside for small businesses if two or more small businesses are available to do the work. Where is there, in that 18 or 20 pages, where is there anything where they found a single identifiable product that is not available for two or more, from two or more small businesses? That is the standard. They have got to review and do market research in order to determine whether there is any product that cannot be supplied by two or more small businesses at a reasonable price. They did not do that. Well, I mean, you say that, but look at, I mean, I've got the site for JA302 where they've got a 20-page analysis and then the conclusion says that based on this analysis, there's significant demand for, offered by large businesses for which no small business has shown the ability to produce. And there you go. And then they go on to give some examples. So... Exactly so. That was a different case because they did find some examples of situations where there were not an availability of small businesses. We don't have that here. There is no product for which they have identified a need of the government and an unavailability of multiple small businesses. That is precisely why they have not met the standard here. They did not find a single product that was unavailable from multiple small businesses. Let's take this from the best possible perspective from the government standpoint because they had some offers in hand, some offers from large businesses. And let's say that they looked at those offers from a large business and they found a tent that they liked from one of the large businesses. Did they identify the salient characteristics of that tent? No. And that's an obligation because you can't just pluck a sole source product and say, gimme. They have an obligation under the Competition and Contracting Act to allow competition to identify the salient characteristics of the product that they want to buy and determine if competition and other sources are available. They can't just say, ooh, I like this particular product. I'm just going to buy it off the street. They have an obligation under the Competition and Contracting Act. If they had identified a particular tent that they like, and again, they have not identified any single product as one that they want to buy and measure that against the availability of small business. Right. But if they had identified a single product, the next thing they've got to do is identify what are the salient characteristics of that product. Where does that come from, salient characteristics? Sure. That's all in the Federal Acquisition Regulations. In terms of the full and open competition... Which one? The specific requirement? Yes, sir. That says salient requirement. The requirements of the Competition and Contracting Act apply to IDIQ contracts. This is laid out to, first of all, there are two statutes that are involved here. You start with the Competition and Contracting, three statutes, I should be clear. You start with the Competition and Contracting Act, which creates this obligation for full and open competition. Layered into that is the Small Business Act. That's where the Rule of Two comes from. The obligation is... Okay. So, we just segued all over the place. We started with, you cited one FAR provision, 19-502. We were talking about the Rule of Two, and then suddenly we're segued into some other requirements. Are we talking about the same FAR requirements, or now we're discussing other FAR requirements? This is part of the process by which the government must go through the determination of how to, or whether the Rule of Two is valid. Okay. I'm just asking you what it is you're alleging. Is this an allegation that some other provision of FAR was violated? Are we still on 19-502? 502 is where the obligation comes in. That's absolutely correct, Your Honor. So that's your case, that you're saying they violated... Yes, that they did not meet the standard that is set out for them in the Small Business Act as implemented through the Federal Acquisition Regulations, exactly so. Because what they said was they haven't found any particular product that they want to buy. So they failed, first of all, and this is an obligation under government contracting too, you have to begin by establishing what are your requirements. You can't have a government contract just going out and doing impulse buying. You must begin, under the Competition and Contracting Act, with defining an actual requirement. This is laid out in the Competition and Contracting Act. I'll mention 10 U.S.C. 2305A1A, in preparing for the procurement of property or services, the head of an agency shall specify the agency's needs. And then FAR 2.101 implements that. So this was kind of a different kind of procurement here, where they were trying to establish a mall. So are you suggesting this whole way they went about it, this procurement thing to establish this sort of e-shopping mall when agencies needed something, that that's a violation of FAR? Not at all. It's perfectly appropriate to set up multiple award contracts, IDIQ contracts. But when they do that, there are certain obligations that they undertake along the way. One of which is to comply with the Small Business Act. Okay, I guess, can I just try to focus you down, because, I mean, I guess we've had a lot of global discussion here. Can you tell us what they, with respect to their market research, you say was deficient. So can you just tell us explicitly what question they should have asked, that they didn't ask, or what? I mean, can you give me something tangible and specific, even by way of example, of what you're arguing here? To begin, they have to identify what they want to buy. They failed to do that. After they identify what they want to buy, they have to do market research to determine if that thing is available from two or more small businesses. They didn't do that. Okay. And when you look at, take the simple situation of our client, S.E.K. At no time did they, we were filing protests saying, guys, you haven't given us the chance, you don't have a proper solicitation here. They didn't even come to us and say, hey, we'd like to buy X, can you provide X? They never identified what they wanted to buy. They never tested against the market whether small businesses could provide whatever it was they wanted to buy. So you end up with multiple deficiencies here. First, failing to specify what they wanted to buy. Second, doing the market research to determine whether it was available or not. And this is where the report from the Small Business Administration becomes so important because the SBA did weigh into this protest. You'll recall that in our protest, GAO reached out to the Small Business Administration and said, what do you guys think about this? And the Small Business Administration, we quoted extensively from their memorandum and their opinion. They laid out quite clearly the deficiencies of this agency. They said, instead of comparing the products of small businesses to the actual solicitation requirements, this agency compared, oddly, only proposals that it already had in hand. So you remember the prior... Just bottom line though, the Small Business Administration couldn't find anything problematic or unlawful about what they were doing, right? Oh, absolutely they did. Their whole opinion is about the flaws in what this agency did. The one thing the SBA did not do was usurp from GAO, GAO's authority to render a decision in the protest. SBA couldn't say, and GAO, you're required to rule in favor of the protester. They laid out all their reasons. You have that extended GAO opinion in which they laid out all the things that this agency did wrong, how it had failed to apply the Rule of Two, how it had failed. At bottom, are you arguing that the government failed to conduct a Rule of Two analysis or that the Rule of Two analysis that they conducted was defective? They purported to conduct a Rule of Two analysis, but it was defective. Did they fail to conduct an analysis, or if they did conduct an analysis, was it defective? It was defective. That it was defective? It was absolutely defective, yes. They purported to comply with the Rule of Two, and bear in mind the history here. We filed our first bid protest. It was defective, why? Because it failed to conduct the required market research to see if the market contains at least two small businesses that are qualified to respond to the bid. Exactly so. On this record, we have demonstrated that they did not establish a reasonable basis for their failure to set aside this procurement for small businesses. Remember, the Small Business Act says they've got an obligation to set it aside if two or more small businesses are available at a reasonable price. They didn't discharge that obligation because they failed to conduct a proper analysis. I ask the questions because it seems to me that, now that I believe you've answered my questions, that I wonder whether we even are able to review your complaint, because you're asking us to review factual determinations that were made with respect to the Rule of Two analysis. Well, these decisions are reviewed quite frequently at all levels, at GAO, at the Court of Federal Claims. What we're talking about here is simply a well-known standard that the agency must have a reasonable basis. It can't be arbitrary and capricious. This is Standard Administrative Procedures Act review. They have to have a reasonable basis for their decision, and we have demonstrated on the record that they did not have a reasonable basis for this determination. They did not have a reasonable basis for failing to do the small business set-aside that is required by the Small Business Act when two small businesses are available. You've exceeded your time. We'll just have one minute for rebuttal. Thank you. Thank you, Your Honor. A minute to use the Court. First, addressing the merits, Your Honor. I think as the Court made clear through its questions, the Contracting Officer here with her market research performed a Rule 2 analysis. It's subject to the highly deferential rational basis review. As the trial court found, the analysis that was performed and the market research that that Contracting Officer didn't identify a single product that wasn't available for multiple small businesses. As you indicated, Judge Prost, the record doesn't support that. In fact, what she specifically did was look at the offers that were received under the existing contract from large businesses, identified the most popular shelters that were offering those shelters or acceptable alternatives, and concluded that they were not. Does Kingdomware have an impact on this case or decision in Kingdomware? Your Honor, I don't think Kingdomware does have an impact on this case. I recognize Kingdomware did hold that Contracting Officers aren't required in every circumstance to do a Rule 2 analysis. Here, however, the Contracting Officer did that analysis, and so that is part of the record, and it's the basis for her decision not to do a set-aside, and so that is up on review before the Court. But just backing up a little bit, I don't think the Court even needs to get to these merits-based arguments, because pursuant to this Court's holding in RECS as well as CGI, SEK doesn't have standing to even bring its challenge. You know, I saw your 28J letter. I would have thought my reading of CGI is that it kind of went against you and hurt your argument. You're trying to use it as sort of being advantageous to you. I don't quite get it. Now, there's some difference between the facts here and the facts there, but I'm not sure how they would undermine the applicability of that holding to our case. Well, I think there's a very important difference in the facts of that case, and that is in CGI, the plaintiff acted immediately after the GAO denied its protest and filed their complaint in the Court of Federal Claims three days later. Here, SEK waited 32 days, and CGI said, yes, we recognize that the general rule is in order to have standing, you have to file a bid. However, there's a narrow exception where, based on these facts, where they acted immediately after the GAO denied the protest, and in so doing, they were diligent, and they diligently and continuously protested, so there they maintained their standing. So we would have to find a lack of diligence in terms of how they behaved here. And so we're talking about 25, 35 days, I don't remember what, the first 10 of which they say they couldn't have done it because the record wasn't, I mean, so you want to, so we have to do an analysis, so we're supposed to conclude that the 15 days versus the three days in that case was sufficient to say there was no due diligence here? Well, the 32 days, Your Honor, it wasn't 15 days. Right, but if you take away, I don't know, are you disputing the fact that they couldn't have filed, done something within the first 10-day period? Yes, Your Honor, we are. They argued that they had to wait until after the GAO published its decision because they were bound by the terms of the GAO's protective order. However, the protective order itself said that filings made at the Court of Federal Claims based on the matters that are sealed at the GAO don't violate that protective order. So there was nothing stopping them from bringing their complaint immediately in the Court of Federal Claims. Things happened very quickly. After the GAO denied S.E.K.'s protest, there was no longer the seek-and-stay. The seek-and-stay didn't apply. Nothing was preventing the agency from proceeding with the procurement and with conducting the price negotiations. And indeed, if this Court was to hold that there's a 32, you can still have standing after 32 days after you lose it, after the GAO denies your protest, then I think it really would create, you know, it would blow, drive a truck, essentially, through this exception that was created by CGI. You mean there's a big difference between 32 and 3? Yes, Your Honor, there is a significant difference in the order of magazines. Ten times the amount of time that was required in CGI. And this gets to, in fact, Congress provided in the statute in 1491B that bid protests are to be resolved expeditiously. Waiting 32 days, essentially, you're demonstrating a lack of interest in this procurement when you do that. And that's not, that's simply not expeditious. It's not diligent. It's not in keeping with Rex. It's not in keeping with, or actually it's similar to Rex, but certainly it's not in keeping with CGI. But alternatively, if the court were to hold that SEK established jurisdiction, even though it waited 32 days, they still would not have a case on the merits, or as we, you know, discussed on the market research in World War II determination. But I think their overarching argument that the agency hasn't specified its needs really is governed by this court's holding in Cervantes, in which it says, look, it's the agencies that determine their needs. And those determinations are given broad discretion. Here we have in the joint appendix, excuse me, at page 133 of the joint appendix, there's a scope, there's a statement that's required for proposal documents that are required for proposal submissions. And then on A137, it lists nine performance requirements. And so while it, you know, right here, I don't really understand what their argument is because, you know, as the trial court found and as the record shows, they did provide for what they were looking for, what the agency's needs are. To the extent that they're arguing, well, these needs aren't specific enough for us, which is what I think they're getting at, that's just inconsistent with how IDIQ-type contracting operates. It's supposed to, if they're there to provide for circumstances when an agency can't come to a specific understanding, you know, a specific, a particular statement of its needs in the future, and it allows for a very general description of the statement of needs. And so with that, Your Honor, we have nothing further. There's no further questions. Thank you. Thank you. May I please report? I won't spend time on the CGI issue. I think that's pretty self-explanatory from the filing they made and the response that we provided to the court. Well, okay. Why don't you just try to respond just really with a couple sentences to the fact that why is there not a substantial difference in this universe? I mean, we deal with 10-year statute of limitations, so typically we're not dealing with the short But in this circumstances, there's a reason for it. So three days is different than 32 days, right? Well, it's quite simple, Your Honor. At GAO, there's a protective order, of course. After the proceedings finished at GAO, we were free to move to the Court of Federal Claims, but the GAO opinion was still under protective order. So although GAO had no objection to us filing its opinion at the Court of Federal Claims, we could not give a copy of that opinion to our client in order to allow our client to review the GAO decision and decide whether it wanted to go to the Court of Federal Claims. We couldn't share that opinion with them until there was a redacted version. That's why we needed some days at the front end to create the redacted version. Okay. So accepting that, that takes 10 days off the front, right? Oh, that was 20. 20? And we then filed it. We moved it expeditiously right after the redacted version was released and we could discuss it with our client. I believe it was 9 or 10 days from that point until we filed at the Court of Federal Claims. So what we've got here, Your Honor, is actually quite a – I won't call it a sleight of hand, but it's a twist. When they started their argument about CGI, they were saying we lacked standing and this court lacked subject matter jurisdiction. The twist is they've now abandoned that and they've turned it into a traditional latches argument. That latches argument failed because there's absolutely no showing of prejudice by the government and we did move expeditiously. Okay. Why don't you move on? Just a couple sentences. You've got virtually no time left on that. All right. I'll move very quickly, Your Honor. First of all, my apologies. I misheard you at the beginning when you asked about Kingdomware. Yes, we are familiar with that. That involved a specific program at the Veterans Administration and the ruling was that that particular – We know what the ruling was. What is your view about the applicability of this case? It is simply irrelevant to this case as counsel for the government can see. There's a very special circumstance involving a particularized Veterans Administration program that did not make the rule of two applicable as we all agree it is applicable here. Okay. We're out of time here. I think we'll rest on the briefs. Thank you. All right. Thank you very much. Thank you.